IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division



**RICHARD F. NAHWOOKSY,**

     Plaintiff,

v.

                             Civil Action No. **3:14CV853**

**HAROLD CLARKE,** *et al.,*

     Defendants.

## MEMORANDUM OPINION

Richard F. Nahwooksy, a Virginia prisoner proceeding *pro se* and *in forma pauperis,* brings this action pursuant to 42 U.S.C. § 1983. The matter is before the Court on the Court's authority to review complaints by individuals proceeding *in forma pauperis, see* 28 U.S.C. § 1915(e)(2), and Defendants' Motion for Summary Judgment (ECF No. 15) on the grounds that, *inter alia,* Nahwooksy failed to exhaust his administrative remedies. These matters are ripe for disposition.

Nahwooksy's Complaint, with attachments, spans 285 pages. (ECF No. 7.)[1] Nahwooksy raises seven separate causes of action, each of which includes a host of sub-claims in various stages of factual and legal development. Given these circumstances, the Court will proceed to dismiss Nahwooksy's frivolous or inchoate claims under 28 U.S.C. § 1915(e)(2), prior to turning to Defendants' Motion for Summary Judgment.

### I. Review Under 28 U.S.C. § 1915(e)(2)

When an individual is proceeding *in forma* pauperis, this Court must dismiss the action if the Court determines the action (1) "is frivolous" or (2) "fails to state a claim on which relief

---

[1] Although the docket describes this document as an amended complaint, it is actually the original complaint because Nahwooksy's initial filing in this matter was simply a letter (ECF No. 1.)

may be granted." 28 U.S.C. § 1915(e)(2). The first standard includes claims based upon "'an indisputably meritless legal theory,'" or claims where the "'factual contentions are clearly baseless.'" *Clay v. Yates*, 809 F. Supp. 417, 427 (E.D. Va. 1992) (quoting *Neitzke v. Williams*, 490 U.S. 319, 327 (1989)). The second standard is the familiar standard for a motion to dismiss under Fed. R. Civ. P. 12(b)(6).

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993); *see also Martin*, 980 F.2d at 952. This principle applies only to factual allegations, however, and "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

The Federal Rules of Civil Procedure "require[] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (second alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Plaintiffs cannot satisfy this standard with complaints containing only "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* (citations omitted). Instead, a plaintiff must allege facts sufficient "to raise a right to relief above the

2

speculative level," *id.* (citation omitted), stating a claim that is "plausible on its face," *id.* at 570, rather than merely "conceivable." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp.*, 550 U.S. at 556). In order for a claim or complaint to survive dismissal for failure to state a claim, therefore, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (citing *Dickson v. Microsoft Corp.*, 309 F.3d 193, 213 (4th Cir. 2002); *Iodice v. United States*, 289 F.3d 270, 281 (4th Cir. 2002)). Lastly, while the Court liberally construes *pro se* complaints, *Gordon v. Leeke,* 574 F.2d 1147, 1151 (4th Cir. 1978), it does not act as the inmate's advocate, *sua sponte* developing statutory and constitutional claims the inmate failed to clearly raise on the face of his complaint. *See Brock v. Carroll*, 107 F.3d 241, 243 (4th Cir. 1997) (Luttig, J., concurring); *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

### A. Summary of Pertinent Allegations

In December of 2013, Nahwooksy was confined in the Powhatan Correctional Center ("Powhatan"). (Compl. 4.)[2] On December 5, 2013, Nahwooksy injured his knee. (*Id.* ¶¶ 14–16.) A doctor subsequently issued Nahwooksy a knee brace and a pair of crutches. (*Id.* ¶ 42.)

Early in the morning of December 30, 2013, institutional investigators came to Nahwooksy's cell to conduct a cell search. (*Id.* ¶ 48.) Investigators Serrano and Leonard entered Nahwooksy's cell and pulled Nahwooksy out of his cell. (*Id.* ¶ 50.) Nahwooksy asked for his knee brace. (*Id.* ¶ 51.) Investigators Serrano and Leonard and Correctional Officer Tally denied Nahwooksy's request for his knee brace. (*Id.*)

---

[2] The Court corrects the capitalization, spelling, and punctuation in the quotations from the parties' submissions.

Correctional Officer Tally cuffed Nahwooksy and placed him on a bench in front of his cell. (*Id.* ¶ 54.) Investigators Serrano and Leonard escorted Nahwooksy's cell partner, Anthony Romero-Cruz, to the shower to conduct a strip search. (*Id.* ¶ 55.) Investigator Maynard-Simon remained at the cell with Nahwooksy.[3] (*Id.* ¶ 56.)

Shortly thereafter, Romero-Cruz became involved in an altercation with Investigators Serrano and Leonard. (*Id.* ¶ 59.) While Investigator Maynard-Simon was preoccupied with the altercation, Nahwooksy "got off the bench and hobbled as fast as [he] could to the cell . . ., and shut the door behind [himself] as he went back into the cell." (*Id.* ¶ 63.) Investigator Maynard-Simon noticed Nahwooksy's actions and yelled repeatedly for assistance in retrieving Nahwooksy. (*Id.* ¶ 64.) Nahwooksy candidly acknowledges that, "[w]hile this was going on, [he] flushed all [of his] contraband." (*Id.* ¶ 65.) Correctional Officer Tally asked Investigator Maynard-Simon how Nahwooksy could have gotten back in the cell, while handcuffed and with the use of only one leg. (*Id.* ¶¶ 66, 68.)

When Correctional Officer Tally entered the cell to retrieve Nahwooksy, Nahwooksy asked for his knee brace. (*Id.* ¶ 69.) Correctional Officer Tally denied this request. (*Id.*) Once Nahwooksy left the cell, Investigator Maynard-Simon threatened to "get" Nahwooksy. (*Id.* ¶ 70.) Investigator Maynard-Simon started screaming that Nahwooksy had assaulted her. (*Id.* ¶ 71.)

Correctional Officers Tally and John Doe then began to escort Nahwooksy out of the cell block with his hands cuffed behind him. (*Id.* ¶ 75.) Correctional Officers Tally and John Doe showed Nahwooksy a cell phone lying on the floor, which apparently had been recovered from Nahwooksy's cell partner. (*Id.* ¶¶ 74–77.) Nahwooksy kicked the cell phone. (*Id.* ¶ 77.)

---

[3] The Court utilizes the spelling of Maynard-Simon's and Serrano's names found in the Motion for Summary Judgment.

4

Sergeant White hit Nahwooksy from behind and knocked him to the ground. (*Id.* ¶ 78.) Correctional Officers Tally and John Doe fell on top of Nahwooksy, further injuring Nahwooksy's knee. (*Id.* ¶¶ 79–80.) Sergeant White then stood over Nahwooksy and pulled and twisted Nahwooksy's injured knee while the knee crackled and popped. (*Id.* ¶ 82.) Sergeant White then shackled Nahwooksy and, along with Correctional Officer Tally, dragged him off of the cell block. (*Id.* ¶ 83.) Two new correctional officers then dragged Nahwooksy to the special housing unit, while Investigator Maynard-Simon walked beside him. (*Id.* ¶¶ 88–93.)

That afternoon, Nahwooksy was charged with Possession of a Communication Device and Simple Assault Upon a Non-Offender. (*Id.* ¶¶ 121–25.) On January 9, 2014, after two separate disciplinary hearings, Hearing Officer Leabough found Nahwooksy guilty of the foregoing charges. (*Id.* ¶¶ 158–205.)

On February 23, 2014, Nahwooksy was transferred from Powhatan to Keen Mountain Correctional Center. (*Id.* ¶ 232.)

Nahwooksy names the following individuals as Defendants: Harold W. Clarke, the Director of the Virginia Department of Corrections ("VDOC"); Jeffrey Dillman, the former Warden of Powhatan; E.P. Locust, the Manager of the Ombudsman Service Unit of the VDOC; Leabough, the Inmate Hearings Officer at Powhatan; Maynard-Simon, an Intelligence Officer at Powhatan; Tally, a correctional officer at Powhatan; White, a Sergeant at Powhatan; and John Doe, a correctional officer.

### B. Nahwooksy's Claims

In specifying his claims for relief, Nahwooksy, repeatedly provides the following unhelpful statement of his claims: "Eighth,[4] Fifth[5] and Fourteenth[6] Amendments were

---

[4] "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII.

violated. Cruel and unusual punishment - excessive force- deliberate indifference, medical - deliberate indifference, due process rights, equal protection, excessive force - deliberate indifference, fundamental fairness, fundamental rights, substantive and procedural rights, 'justice and liberty,' and Disability Act, failure to protect." (*See, e.g.*, Compl. ¶ 325.) Courts must liberally construe *pro se* civil rights complaints in order to address constitutional deprivations. *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). Nevertheless, "[p]rinciples requiring generous construction of *pro se* complaints are not . . . without limits." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). "District judges are not mind readers . . . [and] cannot be expected to construct full blown claims from sentence fragments, which is essentially what [Nahwooksy] is seeking here." *Id.*

For example, Nahwooksy fails to articulate how the Fifth Amendment was implicated, much less violated, by Defendants' conduct. Accordingly, Nahwooksy's claims that Defendants violated his rights under the Fifth Amendment will be DISMISSED. Similarly, Nahwooksy fails to provide a coherent statement of how his rights were violated under the Equal Protection Clause of the Fourteenth Amendment. Additionally, to the extent Nahwooksy seeks to raise

---

[5] This amendment provides:

> No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger; nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation.

U.S. Const. amend. V.

[6] No State shall . . . deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend XIV, § 1.

claims under the Americans with Disabilities Act ("ADA"), he fails to state a cognizable claim.[7] Accordingly, any Equal Protection and ADA claims will be DISMISSED.

In his Sixth Cause of Action, Nahwooksy asserts that his rights under the Sixth Amendment[8] were violated by Defendant Leabough's conduct in convicting Nahwooksy of two institutional infractions. "An inmate's rights at prison disciplinary hearings are defined by the Due Process Clause of the Fourteenth Amendment, rather than the Sixth Amendment guarantees for criminal prosecutions." *Coles v. Virginia*, No. 3:01CV131, 2001 WL 34804602, at *3 (E.D. Va. Nov. 7, 2001) (citing *Wolff v. McDonnell*, 418 U.S. 539, 568–69 (1974)). Accordingly, Nahwooksy's Sixth Amendment claims will be DISMISSED.

Nahwooksy further contends that Defendants violated both his Eighth Amendment rights and his Fourteenth Amendment substantive due process rights. "[I]t is now well established that the Eighth Amendment 'serves as the primary source of substantive protection to convicted prisoners,' and the Due Process Clause affords a prisoner no greater *substantive* protection 'than does the Cruel and Unusual Punishments Clause.'" *Williams v. Benjamin*, 77 F.3d 756, 768 (4th Cir. 1996) (quoting *Whitley v. Albers*, 475 U.S. 312, 327 (1986)). Accordingly, to the extent

---

[7] To state a claim for relief under Title II of the ADA, Plaintiff must allege: (1) he has a disability; (2) he is otherwise qualified to receive the benefits of a public service, program, or activity; and (3) he was excluded from participation in or denied the benefits of such service, program, or activity, or otherwise discriminated against, on the basis of his disability. *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 498 (4th Cir. 2005) (citation omitted).

[8] That Amendment provides:

> In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury . . . and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence.

U.S. Const. amend. VI.

Nahwooksy challenges the conditions of his confinement or the use of excessive force against his person, the Court will evaluate that claim under the Eighth Amendment.

Pared of legal surplusage, Nahwooksy raises the following grounds for relief:[9]

Claim 1     Defendant Clarke violated Nahwooksy's rights:
(a) under the Eighth Amendment when he failed to protect Nahwooksy from the excessive force used against Nahwooksy by his subordinates, (Compl. ¶¶ 320–21);
(b) by failing to ensure that Nahwooksy received due process in conjunction with his institutional convictions for Simple Assault upon a Non-Offender and Possession of a Communication Device, (*id.*).

Claim 2     (a) Defendant Locust violated Nahwooksy's rights under the Eighth Amendment when he failed to respond appropriately to the grievances regarding the threats to and attacks upon Nahwooksy. (*Id.* ¶¶ 322–23.)
(b) Defendant Locust violated Nahwooksy's rights under the Fourteenth Amendment when he failed to respond appropriately to his grievances and ensure the grievance procedure functioned properly. (*Id.*)

Claim 3     Defendant Dillman violated Nahwooksy's rights:
(a) under the Eighth Amendment when he failed to protect Nahwooksy from the excessive force used against Nahwooksy by Dillman's subordinates, (*Id.* ¶¶ 324–25);
(b) under the Fourteenth Amendment by failing to ensure that Nahwooksy received due process in conjunction with his institutional convictions for Simple Assault Upon a Non-Offender and Possession of a Communication Device, (*id.*);
(c) under the Eighth Amendment by failing to ensure that Nahwooksy received appropriate medical care for the injuries caused by Defendant White, (*id.* ¶ 325.F).

Claim 4     Defendant Leabough violated Nahwooksy's rights under the Fourteenth Amendment by denying Nahwooksy due process in conjunction with his convictions for Simple Assault upon a Non-Offender and Possession of a Communication Device. (*Id.* ¶¶ 326–27).

Claim 5     (a) Defendant Maynard-Simon violated Nahwooksy's rights under the Eighth Amendment by falsely stating Nahwooksy had assaulted her,

---

[9] In reciting Nahwooksy's legal claims for relief the Court focuses upon that section of his Complaint where he lists his "claims" and "causes of action" (Compl. ¶¶ 320–33), rather than on the hundreds of factual allegations that precede that section. *Cochran v. Morris*, 73 F.3d 1310, 1318 (4th Cir. 1996) (observing that a court "is not required to piece together causes of action from fragmentary factual recitations").

which encouraged Defendant White to attack Nahwooksy. (*Id.* ¶¶ 328–29.)

(b) Defendant Maynard-Simon violated Nahwooksy's rights under the Fourteenth Amendment by retaliating against him and falsely charging him with assault. (*Id.*)

Claim 6      Defendant White violated Nahwooksy's rights under the Eighth Amendment when he used excessive force against Nahwooksy. (*Id.* ¶¶ 331.)[10]

Claim 7      (a) Defendant Tally violated Nahwooksy's rights under the Eighth Amendment when he permitted Defendant White to assault Nahwooksy. (*Id.* ¶¶ 332–33.A–B.)

(b) Defendant Tally violated Nahwooksy's rights under the Eighth Amendment when he helped Defendant White drag Nahwooksy from the cell block. (*Id.* ¶ 333.C.)

(c) Defendant Tally violated Nahwooksy's rights under the Eighth Amendment by failing to provide Nahwooksy a knee brace or otherwise attend to his medical needs. (*Id.* ¶ 333.D.)

(d) Defendant John Doe, a correctional officer, violated Nahwooksy's rights under the Eighth Amendment when he permitted Defendant White to assault Nahwooksy. (*Id.* ¶¶ 332–33.A–B.)

## II. Motion For Summary Judgment

Summary judgment must be rendered "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the responsibility of informing the Court of the basis for the motion and identifying the parts of the record which demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." *Id.* at 324 (internal quotation marks omitted). When the motion is properly supported, the nonmoving party must go beyond

---

[10] Nahwooksy also mentions that Defendant White was the supervisor of the Special Housing Unit and had "complete control over . . . Nahwooksy and all his paperwork." (Compl. ¶ 331.F.) Nahwooksy, however, fails to explain what action Defendant White took in his role as the supervisor of the Special Housing Unit that violated Nahwooksy's constitutional rights.

9

the pleadings and, by citing affidavits or "'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting former Fed. R. Civ. P. 56(c), (e) (1986)). In reviewing a summary judgment motion, the Court "must draw all justifiable inferences in favor of the nonmoving party." *United States v. Carolina Transformer Co.*, 978 F.2d 832, 835 (4th Cir. 1992) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). However, a mere "'*scintilla* of evidence'" will not preclude summary judgment. *Anderson*, 477 U.S. at 251 (quoting *Improvement Co. v. Munson*, 81 U.S. (14 Wall.) 442, 448 (1872)).

Moreover, not all disputes of fact preclude summary judgment. Instead, "the requirement is that there be no *genuine* issue of *material* fact." *Id.* at 248. With respect to materiality, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* As to genuineness, the nonmoving party "must produce . . . evidence that creates a fair doubt; wholly speculative assertions will not suffice." *Bongam v. Action Toyota, Inc.*, 14 F. App'x 275, 280 (4th Cir. 2001) (citation omitted) (internal quotation marks omitted). "A motion for summary judgment may not be defeated by evidence that is 'merely colorable' or 'is not sufficiently probative.'" *M & M Med. Supplies & Serv., Inc. v. Pleasant Valley Hosp., Inc.*, 981 F.2d 160, 163 (4th Cir. 1993) (quoting *Anderson*, 477 U.S. at 249–50). Thus, the nonmoving party cannot "'create a genuine issue of material fact through mere speculation.'" *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008) (quoting *Beale v. Hardy*, 769 F.3d 213, 214 (4th Cir. 1985)). Nor will mere "'metaphysical doubt as to the material facts'" create a genuine dispute. *Id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). Accordingly, "[t]he nonmovant can show that a dispute is genuine only if it provides sufficient evidence so that a 'reasonable jury could return a verdict

for the nonmoving party.'" *Wiggins v. DaVita Tidewater LLC*, 451 F. Supp. 2d 789, 796 (E.D. Va. 2006) (quoting *Anderson*, 477 U.S. at 248).[11]

### A. The Parties' Submissions

In support of their Motion for Summary Judgment with respect to the issue of exhaustion, Defendants submit: the Affidavit of E. P. Locust, the Manager of the Ombudsman Services Unit of VDOC, (Mem. Supp. Mot. Summ. J. Ex. 5 ("Locust Aff.," ECF No. 16-5); a copy of Virginia Department of Corrections Operating Procedure § 866.1 (*id.* Encl. A ("Operating Procedure § 866.1")),[12] and copies of the pertinent grievance material submitted by Nahwooksy (*id.* Encl. B–C). With respect to Nahwooksy's Due Process Claims, Defendants submit the affidavit of Defendant Dillman (*id.* Ex. 1 ("Dillman Aff.," ECF No. 16-1), and documents related to Nahwooksy's convictions of the two institutional offenses described above, (Dillman Aff. Encls. A–H).

Nahwooksy submitted a Memorandum in Opposition to the Motion for Summary Judgment wherein he references his Complaint and the documents attached to his Complaint. (*See* Pl.'s Mem. Opp'n, ECF No. 29.) Additionally, Nahwooksy submitted an affidavit. (ECF No. 30.) The Complaint is verified under oath and will be considered in evaluating the propriety of summary judgment. Additionally, the Court will consider the documents attached to the Complaint and referenced in the Memorandum in Opposition to the Motion for Summary Judgment.

---

[11] Defendants ask the Court to dismiss some of Nahwooksy's claims because Nahwooksy failed to exhaust his administrative remedies as required by 42 U.S.C. § 1997e(a). Because the exhaustion of administrative remedies is an affirmative defense, Defendants bear the burden of pleading and proving lack of exhaustion. *Jones v. Bock*, 549 U.S. 199, 216 (2007).

[12] The Court has omitted the emphasis in the quotations from this document.

Nahwooksy swore to the entire content of his Memorandum in Opposition to Summary Judgment. (Pl's Mem. Opp'n 49; Nahwooksy Aff. 1, 3.) The Court previously informed Nahwooksy that:

> the Court will not consider as evidence in opposition to any motion for summary judgment a memorandum of law and facts that is sworn to under penalty of perjury. Rather, any verified allegations must be set forth in a separate document titled 'Affidavit' or 'Sworn Statement,' and reflect that the sworn statements of fact are made on personal knowledge and that the affiant is competent to testify on the matter stated therein.

(ECF No. 12, at 2 (citation omitted).) Thus, the Court will not consider any statements in the Memorandum in Opposition to Summary Judgment as evidence.

Furthermore, "summary judgment affidavits cannot be conclusory or based upon hearsay." *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 962 (4th Cir. 1996) (citing *Rohrbough v. Wyeth Labs., Inc.*, 916 F.2d 970, 975 (4th Cir. 1990); *Md. Highways Contractors Ass'n v. Maryland*, 933 F.2d 1246, 1252 (4th Cir. 1991)). Thus, Nahwooksy's conclusory assertions, such as "Defendant(s) have violated affiant's constitutional rights," (Nahwooksy Aff. 2), and that Defendant Leabough was "not an impartial hearing officer," (Compl. ¶ 181), will not be considered in evaluating the Motion for Summary Judgment.

In light of the above submissions and principles, the following facts are established for purposes of the Motion for Summary Judgment as set forth below in Part II.B.1 and Part II.C.1.

## B. Exhaustion of Administrative Remedies

### 1. Summary of Pertinent Facts

#### a. The VDOC Grievance Procedure

Operating Procedure § 866.1, Offender Grievance Procedure, is the mechanism used to resolve inmate complaints. Most matters that concern the inmate are grievable. (Operating

Procedure § 866.1.IV.M.1.)  However, "[d]isciplinary hearing decisions, penalties and/or procedural errors" are not grieveable.  (*Id.* § 866.1.IV.M.2.a.)

Procedure § 866.1 requires that, before submitting a formal grievance, the inmate must demonstrate that he or she has made a good faith effort to resolve the grievance informally through the procedures available at the institution to secure institutional services or resolve complaints.  (*Id.* § 866.1.V.A.)  Generally, a good faith effort requires the inmate to file an informal complaint form.  (*Id.* § 866.1.V.B.1.)  If the informal resolution effort fails, the inmate must initiate a regular grievance by filling out the standard "Regular Grievance" form. (*Id.* § 866.1.VI.A.2.)

"The original Regular Grievance (no photocopies or carbon copies) should be submitted by the offender through the facility mail system to the Facility Unit Head's Office for processing by the Institutional Ombudsman/Grievance Coordinator."  (*Id.* § 866.1.VI.A.2.b.)  The offender must attach to the regular grievance a copy of the informal complaint.  (*Id.* § 866.1.VI.A.2.a.) Additionally, "[i]f 15 calendar days have expired from the date the Informal Complaint was logged without the offender receiving a response, the offender may submit a Grievance on the issue and attach the Informal Complaint receipt as documentation of the attempt to resolve the issue informally."  (*Id.* § 866.1.V.B.2.)  A formal grievance must be filed within thirty days from the date of the incident or occurrence, or the discovery of the incident or occurrence, except in instances beyond the offender's control.  (*Id.* § 866.1.VI.A.1.)

Prior to review of the substance of a grievance, prison officials conduct an "intake" review of the grievance to assure that it meets the published criteria for acceptance.  (*Id.* § 866.1.VI.B.)  A grievance meeting the criteria for acceptance is logged in on the day it is received, and a "Grievance Receipt" is issued to the inmate within two days.  (*Id.*

13

§ 866.1.VI.B.2.) If the grievance does not meet the criteria for acceptance, prison officials complete the "Intake" section of the grievance and return the grievance to the inmate within two working days. (*Id.* § 866.1.VI.B.4.) If the inmate desires a review of the intake decision, he or she must send the grievance form to the Regional Ombudsman within five calendar days of receipt. (*Id.* § 866.1.VI.B.5.)

Up to three levels of review for a regular grievance exist. (*Id.* § 866.1.VI.C.) The Facility Unit Head of the facility in which the offender is confined is responsible for Level I review. (*Id.* § 866.1.VI.C.1.) If the offender is dissatisfied with the determination at Level I, he may appeal the decision to Level II, a review which is conducted by the Regional Administrator, the Health Services Director, or the Chief of Operations for Offender Management Services. (*Id.* § 866.1.VI.C.2.) The Level II response informs the offender whether he or she may pursue an appeal to Level III. (*Id.* § 866.1.VI.C.2.g.)

### b. Facts Pertaining to Nahwooksy's Exhaustion of Administrative Remedies

From December 30, 2013, until May 27, 2015, Nahwooksy filed 39 informal complaints, but he only filed a regular grievance with respect to five of those informal complaints. (Locust Aff. ¶ 12.) Two of the five regular grievances pertained to medical complaints, and Nahwooksy failed to exhaust those grievances through Level II. (*Id.*) Nahwooksy exhausted his administrative remedies with respect to the remaining three grievances; however, they did not pertain directly to claims raised in the present action. (*Id.*) Two grievances pertained to waking up in pain on September 24, and 25, 2014, and the third pertained to Nahwooksy's assignment to segregation status on September 19, 2014. (*Id.*)

With respect to the December 30, 2013 incident and the Eighth Amendment claims arising therefrom, on December 31, 2013, Nahwooksy filed an informal complaint asserting,

*inter alia*, that he had been unjustifiably slammed to the floor after he allegedly assaulted Investigator Maynard-Simon. (Locust Aff. Enc. C, at 1.) On January 24, 2014, past the required response date, VDOC staff responded "you assaulted I/O Simon, and uncooperative." (*Id.*) On January 29, 2014, Nahwooksy received the response to his informal complaint. (Compl. ¶ 133.) Nevertheless, the delay in receiving this response did not prevent Nahwooksy from filing a formal grievance, in light of Operating Procedure § 866.1.V.A.2.[13]

Nahwooksy was required to file a regular grievance regarding the December 30, 2013 incident by January 29, 2014. (Locust Aff. ¶ 11; Operating Procedure § 866.1.VI.A.1.) On January 30, 2014, Nahwooksy filed his regular grievance. (Compl. ¶ 134.) The Grievance Coordinator at Powhatan did not receive the grievance until February 18, 2014. (Locust Aff. ¶ 11.) The grievance was rejected because it was filed outside of the thirty-day filing period. (*Id.* Encl. C, at 3.) Nahwooksy appealed that decision and it was upheld by the Regional Ombudsman. (Locust Aff. ¶ 11.)

### 2. Exhaustion Analysis

#### a. Nahwooksy Failed to Exhaust his Administrative Remedies for His Eighth Amendment Claims

The pertinent statute provides: "No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are *available* are exhausted." 42 U.S.C. § 1997e(a) (emphasis added). This language "naturally requires a prisoner to exhaust the grievance procedures offered, whether or not the possible responses cover

---

[13] As noted above, that section provides that, "[i]f 15 calendar days have expired from the date the Informal Complaint was logged without the offender receiving a response, the offender may submit a Grievance on the issue and attach the Informal Complaint receipt as documentation of the attempt to resolve the issue informally." (Operating Procedure § 866.1.V.B.2.)

the specific relief the prisoner demands." *Booth v. Churner*, 532 U.S. 731, 738 (2001).

Generally, in order to satisfy the exhaustion requirement, the inmate must file a grievance raising

the claim and pursue the grievance through all available levels of appeal, prior to bringing his or

her action to court. *See Woodford v. Ngo*, 548 U.S. 81, 90 (2006). Additionally, the Supreme

Court has instructed that section 1997e(a) "requires proper exhaustion." *Id.* at 93. The Supreme

Court explained that "[p]roper exhaustion demands compliance with an agency's deadlines and

other critical procedural rules," *id.* at 90, "'so that the agency addresses the issues on the

merits.'" *Id.* (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)). The

applicable prison rules "define the boundaries of proper exhaustion." *Jones*, 549 U.S. at 218.

Exhaustion is mandatory, and courts lack discretion to waive the exhaustion requirement. *Porter
v. Nussle*, 534 U.S. 516, 524 (2002)

Nahwooksy failed to submit a complete and timely grievance pertaining to his Eighth

Amendment claims, thus, he has failed to comply with 42 U.S.C. § 1997e(a). *See Woodford*, 548

U.S. at 90. The incident giving rise to the Eighth Amendment occurred on December 30, 2013.

Under VDOC Operating Procedure § 866.1.VI.A.1, Nahwooksy had thirty (30) days, or until

January 29, 2014, to submit a regular grievance. Nahwooksy failed to submit a regular grievance

by that date. Thus, he failed to properly exhaust his administrative remedies for his Eighth

Amendment claims. *See Woodford*, 548 U.S. at 90–94 (concluding an inmate's filing of a

untimely grievance fails to satisfy the exhaustion requirement).[14]

---

[14] In Claim 3(d), Nahwooksy contends that Warden Dillman violated his rights by failing to provide Nahwooksy with appropriate medical care while Nahwooksy was housed at Powhatan. No evidence exists that Nahwooksy exhausted his administrative remedies with respect to this claim.

### b. Nahwooksy Fails to Demonstrate Exhaustion Should Be Excused

Although "an administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it," Nahwooksy fails to demonstrate that he was somehow prevented from pursuing an informal complaint or grievance with respect to this Eighth Amendment claims. *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008) (citations omitted). To excuse compliance with a grievance system, courts have required an inmate show that he was prevented from filing a grievance by affirmative action on the part of prison officials. *Graham v. Cnty. of Gloucester, Va.*, 668 F. Supp. 2d 734, 738 (E.D. Va. 2009) (citing *Brown v. Croak*, 313 F.3d 109, 112–13 (3d Cir. 2002); *Camp v. Brennan*, 219 F.3d 279, 281 (3d Cir. 2000); *Born v. Monmouth Cnty. Corr. Inst.*, No. 07–3771, 2008 WL 4056313, at *3–4 (D.N.J. Aug. 28, 2008)).

Nahwooksy generally alleges that Defendant Locust has "made it a general practice . . . to deny regular grievances access into the grievance process and or regular grievances will become loss or stated they never received regular grievances to the next level." (Pl.'s Mem. Opp'n ¶ 32.) Furthermore, Nahwooksy suggests that Defendant White impeded his ability to exhaust his administrative remedies because Defendant White controls all the mail in the Special Housing Unit at Powhatan. (Compl. ¶ 331.F.) Nahwooksy, however, fails to support these conclusory allegations with evidence that reflects his ability to exhaust his administrative remedies for the present Eighth Amendment claims was frustrated by any specific actions of Defendants White or Locust. [15] Accordingly, Claims 1(a), 2(a), 3(a), 3(c), 5(a), 6, and 7(a)–(c) will be DISMISSED. [16]

---

[15] Nahwooksy insists that he has exhausted his "administrative remedies concerning not receiving medical treatment/care, medical attention for his knee injury" by his filing of grievances in June through August of 2014 at the Keen Mountain Correctional Center. (Pl.'s Mem. Opp'n 32.) Nahwooksy, however, has not pled a coherent claim against any of the present Defendants for denial of medical care while at Keen Mountain Correctional Center.

Defendants also vaguely suggest that Court should dismiss the remainder of Nahwooksy's claims because he failed to exhaust the pertinent administrative remedies. (Mem Supp. Mot. Summ. J. ¶ 22.) Besides Claim 2(b), which is dismissed below, the remainder of Nahwooksy's claims pertain to alleged retaliation and denial of due process in conjunction with his convictions after a disciplinary hearing of two institutional infractions. Defendants' own evidence reflects that "[d]isciplinary hearing decisions, penalties and/or procedural errors" are not grieveable. (Operating Procedure § 866.1.IV.M.2.a.) Thus, the general grievance procedure does not appear to be an available remedy for exhausting these claims. *Moore*, 517 F.3d at 725 (noting that inmates are only required to exhaust remedies that are available). Given the absence of an adequate explanation from Defendants as to why Nahwooksy has failed to exhaust his available administrate remedies pertaining to his institutional convictions, the Court denies their request to dismiss the remainder of the claims for lack of exhaustion.

### C. No Right to Participate in the Grievance Process

In Claim 2(b), Nahwooksy seeks to hold Defendant Locust liable because of her role in reviewing his grievances and failing to ensure that the grievance procedure functioned properly. (*See, e.g.*, Compl. ¶ 323.D.) "[T]he Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state." *Adams v. Rice,* 40 F.3d 72, 75 (4th Cir. 1994) (citations omitted). Thus, Defendant Locust did not deprive Nahwooksy of due process by allegedly failing to ensure the grievance procedure functioned properly. *Id.* Furthermore, a prison official's "after-the-fact denial of a grievance falls far short of establishing § 1983 liability." *Depaola v. Ray*, No. 7:12cv00139, 2013 WL 4451236, at *8 (W.D. Va. July 22, 2013) (citing *Brooks v. Beard*, 167 F. App'x 923, 925 (3d Cir. 2006)). Nahwooksy fails to

---

[16] In Part III, the Court directs Nahwooksy to show cause why Claim 7(d) against Correctional Officer John Doe should not be dismissed for failure to exhaust administrative remedies.

advance any evidence that demonstrates Defendant Locust violated his rights.  Accordingly,

Claim 2(b) will be DISMISSED.

### D. Due Process Claims

#### 1. Summary of Pertinent Facts

On December 30, 2013, Nahwooksy received two institutional charges:  Simple Assault

Upon a Non-Offender[17] and Possession of a Communication Device.  (Dillman Aff. ¶ 7.)  With

respect to the charge of Simple Assault Upon a Non-Offender, the Disciplinary Offense Report

prepared by Defendant Maynard-Simon stated:

> At approximately 5:10 a.m., I entered cell block one to conduct a shakedown of cell A13.  As Intel Officers Serrano and Leonard proceeded to take Offender Romero-Cruz (slept in A13) to the bathroom to be strip searched, Offender Nahwooksy was placed on the bench in front of his cell (A13).  At 5:20 a.m. while there was commotion in the bathroom, Offender Nahwooksy got up from the bench and bolted to his cell pushing me out of the way.  I was standing guard at the cell until the strip searching process was over.

(ECF No. 16–1, at 16.)[18]

With respect to the charge of Possession of a Communication Device, the Disciplinary

Offense Report stated:

> On 12/30/13 at approximately 5:45 a.m., Intel. Officer Maynard-Simon and I walked into Cell A-13 Cell Block One to conduct a search of the cell.  As I began to search the bed assigned to Offender Nahwooksy, a black Virgin Mobile cell phone was found charging on his bed.  The cell phone was bagged in an evidence bag and brought to the investigation office.  The phone was searched for phone numbers and text messages.  A text message was found sent December 29, 2013.  The text message read, "Hey Cynthia this is Rico the hommie Payaso just gave me ur number so this is my number ok."  Offender Nahwooksy['s] nickname is Rico.

---

[17] As explained below, the charge of Simple Assault Upon a Non-Offender did not deprive Nahwooksy of any protected liberty interest.  Therefore, the Court provides only limited discussion of the procedures leading to the conviction of that offense.

[18] For ease of reference, the Court employs the CM/ECF pagination for the documents attached to Dillman's Affidavit.

(*Id.* at 14.) Nahwooksy requested Defendant Maynard-Simon as a witness to verify where the phone was found. (*Id.* at 30.) The requested was granted (*id.*), and Maynard-Simon verified that the phone was found in Nahwooksy's bed. (*Id.* at 31.) Additionally, Nahwooksy also requested inmate K. Wheless as a witness to verify that the phone was found on the top bunk. (*Id.* at 32.) The requested was granted to the extent that VDOC staff obtained a statement from Wheless, (*id.*), and inmate Wheless verified that the phone was recovered from the top bunk. (*Id.* at 33.) Nahwooksy also requested a statement from his cellmate Romero-Cruz to verify that Romero-Cruz's nickname was Rico. (*Id* at 34.) The request was granted to the extent that a statement was obtained from Romero-Cruz (*id.*), and Romero-Cruz verified that his nickname also was Rico. (*Id* at 35.) Additionally, VDOC staff granted Nahwooksy's request to obtain VDOC records which reflected which bed in the cell belonged to Nahwooksy. (*Id.* at 29, 36.)

On January 9, 2014, Defendant Leabough conducted separate disciplinary hearings on Nahwooksy's charges. (*Id.* at 16–17, 38.) Defendant Leabough found Nahwooksy guilty of both charges. (*Id.*) For the charge of Simple Assault Upon a Non-Offender, Nahwooksy was penalized with ten (10) days of confinement in disciplinary segregation. (*Id.* at 17.) For the charge of Possession of a Communication Device, Nahwooksy was penalized with thirty days in disciplinary segregation and the loss of thirty (30) days of statutory good time. (*Id.* at 38.)

At the hearing on the charge of Possession of a Communication Device, Officer Serrano testified that he spoke with Nahwooksy, and Nahwooksy denied that the phone was his. (Compl. ¶ 198.) Officer Serrano and Defendant Maynard-Simon testified the phone was recovered from the top bunk. (*Id.* ¶ 202.) Defendant Leabough considered Nahwooksy's documentary evidence which reflected that Romero-Cruz was assigned to the top bunk. (*Id.* ¶ 202 (citing Ex. 122).) Defendant Leabough also considered Romero-Cruz's statement that his nickname was Rico and

20

the text message found on the phone. (*Id.* ¶¶ 204–05 (citation omitted).) Leabough provided the

following brief summary as to why he found Nahwooksy guilty:

> Guilty based on [Reporting Officer's] summary and oral statement that he found a cell phone charging on the top bunk. The phone had a text message that read "Hey Cynthia this is Rico the hommie Payaso just gave me ur number so this is my number ok". Nahwooksy's nickname is Rico and this is documented on Coris. This is additional reliable information linking the offender to the cell phone. The accused gave no statement nor answered questions.

(ECF No. 16–1, at 38.)

Nahwooksy appealed his conviction for Possession of Communication Device. (Dillman

Aff. ¶ 9.) In rejecting that appeal, Defendant Dillman noted, *inter alia*, that:

> You state in your appeal that the cell phone was found on the top bunk; however, at the time of the incident you were assigned to the bottom bunk. You also state that the Reporting Officer did not ask your cell partner if the phone belonged to him. The Reporting Officer did state that he assumed the cell phone belonged to you as a cell phone belonging to your cell partner had already been found [during strip search of his person]. Although the Reporting Officer's assumption that you were assigned to the top bunk in the cell was incorrect, the cell phone was directly linked to you via a text message that was sent on 12/29/13. The text message states that it was sent by "Rico." The Reporting Officer stated at the hearing that your nickname is "Rico", which is documented as an alias in [our internal records]. The Reporting Officer also stated at the hearing that the message stated that "hommie Payaso" just gave you the number the message was sent to and the Reporting Officer testified that your cell partner goes by the name of "Payaso" .

(ECF 16–2, at 34–35.)

On January 9, 2014, the Institutional Classification Authority ("ICA") conducted a

review of Nahwooksy's status. (Compl. ¶¶ 220–21.) As a result of the two convictions, the ICA

recommended a reduction in rate at which Nahwooksy earned good time credits and

recommended that Nahwooksy's security level be increased and that he be transferred to a higher

security level institution. (Compl. ¶ 221.) On February 25, 2014, Nahwooksy was transferred to

Keen Mountain Correctional Center. (*Id.* ¶ 232.)

21

### 2. Assessment of Whether the Deprivation Impacted a Protected Liberty Interest

Demonstrating the existence of a state-created liberty interest requires a "two-part analysis." *Prieto v. Clarke*, 780 F.3d 245, 249 (4th Cir. 2015) (internal quotation marks omitted) (citation omitted). First, a plaintiff must make a threshold showing that the deprivation imposed amounts to an "atypical and significant hardship" or that it "inevitably affect[s] the duration of his sentence." *Sandin v. Conner*, 515 U.S. 472, 484, 487 (1995); *see Puranda v. Johnson*, No. 3:08CV687, 2009 WL 3175629, at *4 (E.D. Va. Sept. 30, 2009) (citing cases). If the nature of the restraint the plaintiff challenges meets either prong of this threshold, the plaintiff must next show that Virginia's statutory or regulatory language "'grants its inmates . . . a protected liberty interest in remaining free from that restraint.'" *Puranda*, 2009 WL 3175629, at *4 (omission in original) (quoting *Abed v. Armstrong*, 209 F.3d 63, 66 (2d Cir. 2000)).

With respect to the *Sandin* threshold analysis, the Court must first "determine what the normative 'baseline' is: what constitutes the 'ordinary incidents of prison life' for *this particular inmate*?" *Incumaa v. Stirling*, 791 F.3d 517, 527 (4th Cir. 2015) (citing *Prieto*, 780 F.3d at 253). Second, "with the baseline established, [the Court] determine[s] whether the prison conditions impose atypical and substantial hardship in relation to that norm." *Id.* (citing *Prieto*, 780 F.3d at 254). The Fourth Circuit has observed that, "[a]lthough the general prison population is not the relevant atypicality baseline in all cases, it is the touchstone in cases where the inmate asserting a liberty interest was [initially] sentenced to confinement in the general population and later transferred to security detention." *Id.* at 528-29 (citing *Prieto*, 780 F.3d at 252)

*Sandin* itself forecloses the notion that all forms of punitive or administrative segregation presumptively constitute an "atypical and significant hardship" in relation to the ordinary incidents of prison life. *Sandin*, 515 U.S. at 484. In *Sandin*, the Supreme Court rejected DeMont

22

R.D. Conner's claim that he enjoyed a liberty interest in avoiding confinement in punitive

segregation for thirty (30) days. *Id.* at 487. The dissent observed:

> In the absence of the punishment, Conner, like other inmates in [the] general
> prison population would have left his cell and worked, taken classes, or mingled
> with others for eight *hours* each day. As a result of disciplinary segregation,
> however, Conner, for 30 days, had to spend his entire time alone in his cell (with
> the exception of 50 *minutes* each day on average for brief exercise and shower
> periods, during which he nonetheless remained isolated from other inmates and
> was constrained by leg irons and waist chains).

*Id.* at 494 (Breyer, J., dissenting) (internal and external citations omitted). The majority

concluded that the foregoing conditions "did not present the type of atypical, significant

deprivation in which a State might *conceivably* create a liberty interest." *Sandin*, 515 U.S. at 486

(emphasis added).

With respect to his conviction for Possession of a Communication Device, among other

things, Defendants revoked thirty days of Nahwooksy's vested statutory good time. It is well

established that inmates have a protected liberty interested in vested good time credits. *See Wolff*

*v. McDonnell*, 418 U.S. 539, 560–61 (1974); *Puranda v. Hill*, No. 3:10CV733–HEH, 2012 WL

2311844, at *3 (E.D. Va. June 18, 2012) (citing *Sciolino v. City of Newport News, Va.*, 480 F.3d

642, 653 n.9 (4th Cir. 2007)). Thus, in the next section, the Court assesses whether Nahwooksy

received the process the Constitution requires in conjunction with that conviction. Nevertheless,

as explained immediately below, Nahwooksy fails to demonstrate that his conviction for Simple

Assault Upon a Non-Offender deprived him of any protected liberty interest.

As an immediate result of his conviction for Simple Assault Upon a Non-Offender,

Nahwooksy was penalized with placement in segregation for ten days. Here, Nahwooksy has not

supplied evidence with respect to what life was like in the general prison population. Nor has

Nahwooksy provided evidence regarding the conditions in segregation which indicate such

conditions significantly exceeded the conditions described in *Sandin*. Moreover, courts in the

Fourth Circuit have repeatedly rejected the notion that inmates enjoy a protected liberty interest

in avoiding confinement in segregation. *See United States v. Daniels*, 222 F. App'x 341, 342 n.*

(4th Cir. 2007) ("Extended stays on administrative segregation . . . do not ordinarily implicate a

protected liberty interest." (citing *Beverati*, 120 F.3d at 502)). *But see Incumaa*, 791 F.3d at 530–

32 (concluding solitary confinement for twenty years constituted an atypical and significant

hardship). Thus, Nahwooksy fails to demonstrate that he enjoyed a protected liberty interest in

avoiding segregation.

As an indirect result of conviction for Simple Assault Upon a Non-Offender, VDOC

officials also transferred Nahwooksy to a different prison, increased his security level, and

decreased the rate at which he earned good time credits. Well-established precedent reflects that

Nahwooksy does not enjoy a protected liberty interest in avoiding a transfer, *see Cochran v.*

*Morris*, 73 F.3d 1310, 1318 (4th Cir. 1996) (en banc), maintaining a particular security level, *see*

*Baines v. Barlow*, No. 7:10CV00535, 2010 WL 5477690, at *2–3 (W.D. Va. 2010) (concluding

Virginia's law did not give rise to a liberty interest in maintaining or obtaining a particular

security level); *Saunders v. Webb*, No. 7:08CV00293, 2008 WL 1904665, at *2–3 (W.D. Va.

Apr. 29, 2008) (concluding change in security level does not pose an atypical and significant

hardship under *Sandin*), or earning future good time credits at a particular rate, *Mills v. Holmes*,

95 F. Supp. 3d. 924, 935 (E.D. Va. 2015) (observing that Virginia "[i]nmates have no protected

liberty interest in remaining in or being assigned to a particular good conduct allowance

level . . . ." (quoting *West v. Angelone*, No. 98–6858, 1998 WL 746138, at *1 (4th Cir. Oct. 26,

1998))); *Puranda*, 2009 WL 3175629, at *5. As Nahwooksy fails to demonstrate that his

conviction for Simple Assault Upon a Non-Offender resulted in the deprivation of any protected

liberty interest, any due process claims pertaining to those convictions will be DISMISSED.

### 3. Process Required and Provided in Conjunction with the Conviction for Possession of a Communication Device

The Constitution guarantees only the following minimal process prior to revoking vested

good time credits:

> (1) an impartial tribunal; (2) written notice of the charges prior to the hearing; (3) an opportunity to call witnesses and present documentary evidence; (4) aid from a fellow inmate or staff representative if the issues are complex; and, (5) a written statement by the fact finder describing the evidence relied upon and the reasons for taking disciplinary action.

*Coor v. Stansberry*, No. 3:08CV61, 2008 WL 8289490, at *2 (citing *Wolff*, 418 U.S. 563–71).

Furthermore, "the requirements of due process are satisfied if *some evidence* supports the

decision by the prison disciplinary board to revoke good time credits." *Superintendent, Mass.*

*Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 455 (1985) (emphasis added). The Supreme Court

emphasized:

> Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board.

*Id.* at 455–56.[19]

The vast majority of Nahwooksy's complaints fail to touch upon the procedural

protections described above, but rather charge VDOC officials with failing to sign a document or

properly process his appeal, or some error that is not relevant to the due process analysis. The

---

[19] Contrary to Nahwooksy's suggestion, the alleged failure of Defendants to follow their own internal procedural regulations for conducting disciplinary hearings does not give rise to a due process violation. *Brown v. Angelone*, 938 F. Supp. 340, 344 (W.D. Va. 1996) (observing that "a state's failure to abide by its own law as to *procedural* protections is not a federal due process issue" (citing *Riccio v. Cty. of Fairfax, Va.*, 907 F.2d 1459, 1469 (4th Cir. 1990))).

undisputed evidence reflects that Nahwooksy received written notice of the charges prior to the hearing, an opportunity to call witnesses and present documentary evidence, and a written statement by the fact finder describing the evidence relied upon and the reasons for finding him guilty of Possession of a Communication Device.[20] As pertinent here, Nahwooksy asserts: (1) insufficient evidence existed to support his conviction; and (2) Defendant Leabough was not impartial. As explained below, these charges lack merit.

First, ample evidence supported Nahwooksy's conviction for Possession of a Communication Device. The cell phone was found in Nahwooksy's cell. The VDOC officials had just recovered another cell phone from Nahwooksy's cell mate, thus supporting the inference that the second cell phone in the cell belonged to Nahwooksy. The cell phone contained a text message which, as noted by Defendant Dillman in rejecting Nahwooksy's appeal, fairly conclusively demonstrated that Nahwooksy had used the cell phone found in the cell.

Next, Nahwooksy asserts that Defendant Leabough was not impartial. It is well settled that "the degree of impartiality required of prison hearing officials does not rise to the level of that required of judges generally." *Francis v. Coughlin*, 891 F.2d 43, 46 (2d Cir. 1989). "The constitutional standard for proving impermissible bias is high." *Portee v. Vannatta*, 105 F. App'x 844, 845 (7th Cir. 2004) (citing *Piggie v. Cotton*, 342 F.3d 660, 666 (7th Cir. 2003)). Due process only forbids "officials who are directly or substantially involved in the factual events

---

[20] Nahwooksy complains that, when conducting the investigation of the charge for Possession of Communication Device, Correctional Officer Serrano failed to ask Romano-Cruz to whom the cellphone found in the cell belonged. (Compl. ¶ 327.H.) Nahwooksy, however, does not charge that VDOC officials denied him the ability to call Romano-Cruz or some other individual as a witness with respect to the charge of Possession of a Communication Device. Moreover, Nahwooksy did not request Romano-Cruz to testify to this fact. Rather, Nahwooksy only requested to Romano-Cruz verify that his nickname was Rico and VDOC officials permitted Romano-Cruz to offer a written statement to that effect. (ECF No. 16–1, at 35); *Brown v. Braxton*, 373 F.3d 501, 506–09 (4th Cir. 2004) (discussing use of written statements from inmates rather than live testimony at disciplinary hearings).

underlying the disciplinary charges, or the investigation thereof, from serving on the board

hearing the charge." *Piggie*, 342 F.3d at 667 (citation omitted)); *accord Meyers v. Alldredge*,

492 F.2d 296, 306 (3d Cir. 1974); *Neal v. Warden of FCC-Petersburg*, No. 2:09CV406, 2010

WL 2024706, at *6 (E.D. Va. Apr. 22, 2010) (citation omitted).  Furthermore, the hearings

officer "is entitled to a presumption of 'honesty and integrity'" absent clear and convincing

evidence to the contrary. *Neal*, 2010 WL 2024706, at *6 (quoting *Withrow v. Larkin*, 412 U.S.

35, 47 (1975)).

Nahwooksy asserts that Defendant Leabough was biased because: "Leabough just found

[Nahwooksy] guilty in prior case" of Simple Assault Upon a Non-Offender that involved

Defendant Maynard-Simon (Compl. ¶ 201), and failed to accept Nahwooksy's arguments that

Defendants had violated VDOC procedures. (Pl.'s Mem. Opp'n 14–15.)[21]  Even in the context

of judges, adverse procedural ruling are insufficient to establish bias. *Liteky v. United States*,

510 U.S. 540, 555 (1994) (citation omitted) (observing that adverse "rulings alone almost never

constitute a valid basis for a bias or partiality motion").  Furthermore, the fact that Defendant

Leabough presided over Nahwooksy's prior offense and found him guilty is insufficient to

establish bias. *See Piggie*, 342 F.3d at 667.  Nor do Nahwooksy's vague allegations that

Defendant Leabough deviated from VDOC regulations overcome the presumption of honesty

and integrity accorded to Defendant Leabough.  Nahwooksy fails to advance any evidence that

shows Defendant Leabough was directly or substantially involved in the factual events

underlying his disciplinary charges. *See Piggie*, 342 F.3d at 667.  Thus,

---

[21] Nahwooksy complains that with respect to the charge of Simple Assault Upon a Non-Offender, "Leabough found offender Nahwooksy guilty solely base[d] on reporting officer Maynard Simon's say so, disregarding offender's statement as well as witness K. Wheles's statement. [Leabough] has violated numerous policies and procedures . . . ." (Pl.'s Mem. Opp'n 15.)

Nahwooksy fails to direct the Court to any evidence from which a reasonable juror could find Defendant Leabough was biased. Furthermore, he fails to demonstrate that he was denied due process.

Nahwooksy's due process claims must be dismissed. As explained above, Nahwooksy fails to demonstrate his conviction for Simple Assault Upon a Non-Offender resulted in a deprivation of a protected liberty interest. Furthermore, Nahwooksy received all of the process required in conjunction with his conviction for Possession of Communication Device. Accordingly, Claims 1(b), 3(b), 4, and 5(b) will be DISMISSED.[22]

### III. Outstanding Matters

The Court has dismissed all of Nahwooksy's claims against the served Defendants. The John Doe Correctional Officer, named in conjunction with Claim 7(d), has yet to be identified and served with process. Nevertheless, it is apparent from the record that, should Nahwooksy ever identify and serve the John Doe Correctional Officer, Claim 7(d) would be subject to dismissal for lack of exhaustion. *See* 42 U.S.C. 1997e(a). "After giving notice and a reasonable time to respond, the court may . . . consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute." Fed. R. Civ. P. 56(f)(3). Given the current state of the record, within twenty (20) days of the date of entry hereof, Nahwooksy is directed to show good cause why the Court should not grant summary judgment and dismiss Claim 7(d) because he failed to exhaust his administrative remedies for Claim 7(d). *See Smith v.*

---

[22] In part of Claims 3(b) and 5(b), Nahwooksy demands relief because Defendant Maynard-Simon filed the false of charge of Assault upon a Non-Offender in retaliation for his making her look foolish by rushing back into his cell and flushing contraband down the toilet. In order to survive summary judgment, Nahwooksy must demonstrate "that the retaliatory act was taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right." *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994). Nahwooksy enjoys no constitutional right to embarrass a correctional officer and destroy contraband. Additionally, as reflected above, the charge of Simple Assault Upon a Non-Offender did not deprive Nahwooksy of a constitutional right. Thus, the claims of retaliation lack merit and will be DISMISSED.

*Godinez*, No. 12–1498, 2014 WL 471790, at *2–3 (C.D. Ill. Feb. 5, 2014) (granting summary

judgment *sua sponte* for lack of exhaustion); *see also Anderson v. XYZ Corr. Health Servs., Inc.*,

407 F.3d 674, 682 (4th Cir. 2005) (observing that "a district court may raise the issue of

exhaustion of remedies on its own motion").[23]

 Nahwooksy has filed a Motion for Production of Documents wherein he seeks the video

footage of the cameras in his housing unit on December 30, 2013, copies of his medical records,

and other internal prison records. (Mot. Production of Documents 1–2, ECF No. 20.)

Defendants oppose the Motion for Production of Documents and filed a Motion for a Protective

Order. (ECF No. 22.) Defendants correctly note that the sought after video footage and

documents would not aid Nahwooksy on summary judgment given their defense of exhaustion to

his Eighth Amendment claims. Furthermore, Nahwooksy fails to articulate how the requested

documents or video footage could allow his due process claims to survive summary judgment.

The requested material would not demonstrate that his conviction of Simple Assault Upon a

Non-Offender resulted in a deprivation of due process or that he was denied the requisite process

in conjunction with his conviction for Possession of a Communication Device.

 Lastly, Nahwooksy suggests the requested material may reveal the name of the John Doe

Correctional Officer so he could be served. However, as explained above, it will be unnecessary

to identify and serve the John Doe Correctional Officer unless Nahwooksy can demonstrate that

---

[23] Nahwooksy is advised that he is entitled to file a response that includes counter-affidavits, statements, exhibits, or other legal or factual material that supports his position in the case. An affidavit is a sworn statement of facts made on personal knowledge, and affidavits may be submitted by Nahwooksy or any other witnesses. There are two alternative ways to submit an affidavit to the Court, one of which must be followed. One way is for the person making the affidavit to sign the affidavit and swear to the truth of its contents before a notary public. The other way, which does not require a notary public, is for the person making the affidavit to sign the affidavit and certify that he or she signs under penalty of perjury and understands that he or she may be prosecuted if the facts he or she sets forth are untrue. Nahwooksy may also file a legal brief.

he exhausted his administrative remedies for Claim 7(d). Given the foregoing circumstances, Nahwooksy's Motion for Production of Documents (ECF No. 20) and Defendants' Motion for a Protective Order (ECF No. 22) will be DENIED WITHOUT PREJUDICE to renew if Claim 7(d) survives summary judgment.

## IV. Conclusion

The Motion for Summary Judgment (ECF No. 15) will be GRANTED. Except for Claim 7(d), all of Nahwooksy's claims will be DISMISSED. Within twenty (20) days of the date of entry hereof, Nahwooksy is DIRECTED to show good cause why Claim 7(d) should not be dismissed for failure to exhaust his administrative remedies. Nahwooksy's Motion for Production of Documents (ECF No. 20) will be DENIED WITHOUT PREJUDICE. Defendants' Motion for a Protective Order (ECF No. 22) will be DENIED WITHOUT PREJUDICE.

An appropriate Order shall accompany this Memorandum Opinion.

Date: 2-29-16
Richmond, Virginia

/s/
James R. Spencer
Senior U. S. District Judge